Argued February 8, affirmed February 26, 1918.

# ARCHAMBEAU v. EDMUNSON.

(171 Pac. 186.)

**Trial—Special Interrogatories—Defects.**

1. Objections to the form of special interrogatories submitted are waived where, prior to submission, they were not called to the court's attention.

**Trial—Special Interrogatories—Objections.**

2. A special interrogatory should not submit to the jury a question calling for a conclusion of law, and, in order to sanction judgment, a special verdict should contain statements of ultimate facts.

**Deeds—Delivery—Question of Fact.**

3. Where there is any controversy upon the subject the delivery of a deed or instrument of such nature is a question of fact.

**Trial—Special Interrogatories—Objections—Waiver.**

4. Where the court's attention was not called to any defect of form, a special interrogatory submitting to the jury the question whether a contract for the sale of land was delivered is not open to objection on the ground that it called for determination of the ultimate fact of delivery instead of the evidentiary facts from which that fact was to be deduced.

**Evidence—Admissions—Admissions in Open Court.**

5. In an action for damages for breach of contract to convey land, where plaintiff's counsel in open court stated that if the contract was not delivered plaintiff would only be entitled to recover sums paid, such statement is an admission binding on plaintiff, and a verdict for a greater sum cannot be sustained where the jury found that the contract had not been delivered.

> [As to silence of attorney, when opposing attorney during trial states matters of fact admitted by adverse party, as admission of such matters, see note in Ann. Cas. 1913E, 945.]

**Trial—Special Findings—Conflicts.**

6. Under Section 155, L. O. L., special findings by the jury will, where conflicting with the general verdict, control.

**Appeal and Error—Review—Questions Presented.**

7. While under Section 548, L. O. L., an order setting aside judgment is deemed a final judgment for the purpose of review, yet as there is no determination on the merits, the propriety of a ruling that counterclaims and defenses interposed by certain of the defendants were sufficient cannot be reviewed.

**Trial—Instructions—"Execution of Writing."**

8. In an action for damages for breach of a contract to convey land, an instruction that before the contract could be binding on defendants there must be an execution and delivery, and if there was no delivery or if there was an unauthorized delivery there could be no recovery, is, under section 777, L. O. L., declaring that the execution of a writing is the subscribing and delivering, erroneous; there being no attempt in the instructions to define or explain what in law constitutes the delivery of a writing.

**New Trial—Authority of Court—Error of Law.**

9. Under Article VII, Section 3, of the Constitution, as amended, declaring that in actions at law where the value in controversy shall exceed $20 the right of trial by jury shall be preserved, and no fact tried by jury shall be otherwise re-examined in any court unless the court can affirmatively say there is no evidence to support the verdict, the trial court has authority on its own motion to grant a new trial on account of errors in instructions submitting the cause to the jury, even though no exception was taken.

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 2.     Statement by MR. JUSTICE MOORE.

This was an action to recover damages for the alleged breach of an agreement. The complaint, as far as deemed material herein, substantially charges that on September ——, 1912, a written contract was subscribed by the parties whereby the defendants, in consideration of the payment of $150 an acre, stipulated to sell and convey to the plaintiff a sand and gravel bar in the Willamette River on the Blighton farm in Lane County, Oregon, and within a designated time they would procure a survey of the land and deposit with a specified bank an abstract showing a marketable title to the tract and a deed convey-

ing it to the plaintiff; that pursuant to the terms of the agreement he took possession of the land, made valuable improvements thereon, and paid $400 on account of the purchase price; that the written contract was subsequently modified so that plaintiff agreed to pay $175 an acre for the premises; that without his consent the defendants sold and conveyed to a third person a part of the tract which they had stipulated to grant to the plaintiff, to his damages, etc.

The answer denies the material averments of the complaint and for a further defense so far as considered important, alleges in effect that no written agreement had ever been consummated by the parties; that the defendants had fully performed all the terms of an oral agreement to sell and convey the land, causing the premises to be surveyed and tendered a deed therefor to the plaintiff from whom they demanded the remainder of the consideration, but he refused to comply therewith. For another defense and by way of counterclaim the answer charges that the plaintiff hauled away from the bar sand and gravel of a specified value, and upon demand for the payment thereof he refused to adjust the matter to the defendants' damage.

A reply put in issue the allegations of new matter in the answer. At the trial of the cause testimony was received on the part of the defendants tending to show that a writing was subscribed by them and left with their attorney from whom, without their consent, an agent of the plaintiff obtained the document for the represented purpose of making a copy, and thereupon delivered the paper to his principal who signed it. When all the testimony had been received, the Court addressing plaintiff's counsel inquired:

"If the jury should find that this contract was never delivered to the plaintiff, then do you concede that

your case would fail?" The counsel replied: "No, sir, I do not."

The Court: "Suppose that the jury should find that this contract was never consummated,—never delivered?" Counsel: "Even in that event, we would be entitled to our money back on the ground that the violation of the contract was willful."

The Court: "You would not contend that you would be entitled to any more than your money back?" Counsel: "If they found that no contract was delivered, all we would be entitled to would be upon the basis of a rescission. Our money back."

The Court: "That is one of the special questions that I am going to submit to the jury."

Thereupon written interrogations, without objection or exception, were propounded by the court to the jury, who answered them as follows:

"Question No. 1. Was the written contract, 'Exhibit A' delivered by the defendant to the plaintiff? Answer. No.

"Question No. 2. Did the defendants offer to convey to the plaintiff all the land which they agreed to convey? Answer. No.

"Question No. 3. How much, if any, is the plaintiff entitled to as general damages? Answer: $1,600.

"Question No. 4. How much, if any, are the defendants entitled to recover on account of sand and gravel removed from the premises? Answer. Nothing."

A general verdict was also returned in plaintiff's favor for $1,600 and a judgment was entered therefor. The defendants' counsel then moved to set aside such determination and for a judgment in favor of their clients on the ground that the general verdict was inconsistent with the special findings, which motion was granted. Thereupon the court, upon its own motion, deeming that its charge to the jury, which was not challenged in any manner, was not sufficiently specific in respect to the alleged delivery of the written con-

tract, set aside the latter judgment and granted a new trial, from which order the defendants appealed. Thereafter the plaintiff also took a cross-appeal from the order setting aside the first judgment.

AFFIRMED.

For appellants there was a brief over the names of *Mr. Charles A. Hardy* and *Messrs. Williams & Bean,* with oral arguments by *Mr. Hardy* and *Mr. John M. Williams.*

For respondent there was a brief over the names of *Mr. Fred E. Smith, Mr. C. M. Kissinger, Mr. J. H. Bower* and *Mr. W. G. Martin,* with oral arguments by *Mr. Smith* and *Mr. Kissinger.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. Considering these appeals in reverse order, it is contended by plaintiff's counsel that an error was committed in submitting to the jury the first interrogatory which it is asserted involved an issue of law that should have been determined by the court, and that though the written contract may not have been actually delivered, the inquiry took from the jury a consideration of the question as to whether or not the alleged agreement was acted upon by the parties and thereby ratified so as to become a binding obligation, and for these reasons the first judgment was improperly set aside. A text-writer, referring to such interrogatories remarks:

"If the questions asked are defective, the court's attention should be called to the fact before they are submitted, otherwise they will not be closely criticised on appeal. But if questions are omitted which a party thinks should be submitted, he cannot raise the question by objecting to the submission of the draft. His

remedy is by submitting an additional draft containing the facts on which he desires findings": Clementson, Special Verdicts, p. 69. This author further observes: "Objections to form must be made at the time of submission, otherwise it will be presumed that there was assent to the submission of questions as drawn by the court": Id. 193.

As no objections to the interrogatories submitted were interposed, nor additional drafts suggested, so as to call to the court's attention the facts now urged in respect to a possible ratification of the terms of the alleged contract, all questions relating to that subject were thereby waived.

2–4. In support of the assertion that the first interrogatory involved a question of law, reliance is had upon the case of *White* v. *White,* 34 Or. 141, 158 (50 Pac 801, 55 Pac. 645), where over objection, an issue was submitted requiring a special verdict as to the delivery of a deed, and it was held that the investigation demanded, properly related to a probative fact upon which the rights of the parties depended and was determinative of the case, and that the interrogatory did not refer to mere evidentiary facts, which might afford only *prima facie* proof of some other fact. In that case the inquiry submitted, omitting names, was in effect: Did the deceased in his lifetime voluntarily place the deed in question in possession and control of the defendant, the grantee named in the sealed instrument? An objection was interposed to the question on the ground that it was inconclusive, immaterial and misleading. The jury answered the inquiry in the affirmative.

When there is any controversy upon the subject, the delivery of a deed is always a question of fact: 2 Jones, Real Prop., § 1220. In *Flint* v. *Phipps,* 16 Or. 437, 439 (19 Pac. 543), Mr. Justice STRAHAN in speak-

87 Or.—31

ing of a deed remarks: "The question of delivery is purely a question of fact." In *State* v. *Leonard,* 73 Or. 451, 483 (144 Pac. 113, 681), Mr. Justice RAMSEY in referring to this subject observes:

"The question of delivery is always a question of fact for the jury where there is any conflict in the evidence in relation thereto."

A text-writer, discussing this matter, says:

"Some courts have stated broadly that delivery is a question of fact. Taken literally, however, this declaration is, perhaps, too sweeping, as ignoring the occasional instances in which the undisputed facts establish delivery as a matter of law. And strictly speaking the question is rather one of mixed law and fact, for from the detail of facts established the legal conclusion must be drawn, though, since the jury usually must find a delivery or not, or else the circumstances from which the court may draw its conclusions, the question may properly be denominated, as has been done in a number of cases, largely one of fact, being so much so, indeed, that the decision of the lower court is conclusive unless the specific facts found conclusively establish the contrary": 8 R. C. L. 976.

The rule established sustains the statement that an interrogatory should not be submitted to the jury which calls for a conclusion of law (38 Cyc. 1912, 1917), and in order to sanction a judgment rendered thereon, special verdicts must contain statements of ultimate facts: Id. 1921. As no objection was interposed to the form of the inquiry, an answer to which required a consideration and determination on the part of the jury of the ultimate fact relating to the delivery of the written contract and not the mere evidentiary facts from which the fact, incapable of further analysis, was to be deduced, no error was committed in the respect alleged.

5. It is insisted by plaintiff's counsel that the second interrogatory assumes that the defendants agreed to convey the land to the plaintiff, and that this inquiry is so inconsistent with the first, that an error was committed in setting aside the original judgment. From the colloquy between the court and plaintiff's counsel, as hereinbefore set forth, the issue seems to have been narrowed to a consideration of the question as to whether or not the defendants delivered to his client the written contract, and if no surrender thereof had been made then the plaintiff's recovery was limited to $400, the amount paid on account of the alleged purchase, from an acceptance of which sum an oral agreement to sell and convey the land might reasonably be inferred, and this being so, a breach thereof required a return of the money thus received. This is the construction which the trial court seems to have given to the second interrogatory, the language of which is not inconsistent with the first.

It is argued by plaintiff's counsel that the jury unmistakably intended to award his client a recovery of $1,600, and hence the judgment originally rendered therefor was erroneously set aside. The answers to the first and third interrogatories are inconsistent when viewed in the light of the questions propounded by the court to plaintiff's counsel and his replies thereto. Since he thus solemnly asserted in open court that only $400 could legally be recovered, in case the jury should find the written contract was never delivered, that declaration should be binding.

6. When special findings made by the jury are inconsistent with the general verdict, the findings are controlling: Section 155, L. O. L.; *Rolfes* v. *Russel*, 5 Or. 400; *Loewenberg* v. *Rosenthal*, 18 Or. 178 (22 Pac. 601); *Leavitt* v. *Shook*, 47 Or. 239 (83 Pac. 391); *Palmer* v. *Portland Ry., L. & P. Co.*, 62 Or. 539 (125

Pac. 840); *Parker* v. *C. A. Smith Lumber & Mfg. Co.,* 70 Or. 41 (138 Pac. 1061); *Herrlin* v. *Brown & McCabe,* 71 Or. 470 (142 Pac. 772). In consequence of the inconsistency in the answers to the interrogatories mentioned, the judgment based upon the general verdict was properly set aside, instead of disregarding the answer to the first question returned by the jury and rendering judgment on the general verdict.

7. Exceptions were taken by plaintiff's counsel to the court's ruling that a counterclaim, interposed as a defense to the maintenance of the action, was sufficient and in sustaining the contention of the defendants, H. L. Edmunson, Millie Blighton and R. A. Maltzan that each signed the writing intended as a contract in order to release an inchoate right of curtesy or of dower in and to the premises described in the complaint, and that neither of them was liable for a breach of the agreement. It will be remembered that the cross-appeal was taken from the order setting aside the first judgment. Such direction of a court is deemed to be a judgment or decree for the purpose of being reviewed: Section 548, L. O. L. The only question presented by an appeal from an order setting aside a judgment is the action of the court in that respect, and as no final determination upon the merits of the cause then remains, any other ruling in relation to the issues must necessarily be held in abeyance until a judgment thereon has been regularly rendered. The alleged assignments of error in these particulars will, therefore, not be considered.

8, 9. The defendants' counsel contend that since no objections were made or exceptions taken to any part of the charge to the jury, the court erred in setting aside the judgment ultimately rendered in favor of their clients and in granting a new trial. It will be remembered that the trial court, deeming its unchal-

lenged instructions in respect to an alleged delivery of the written contract were insufficient properly to enable the jury to understand the rules of law governing the surrender of the possession of a writing, set aside the second judgment and granted a new trial upon its own initiative. The jury were charged *inter alia* as follows:

"Before this written contract can be binding upon the defendants, there must be an execution and delivery of the contract. If you find there was not a delivery of the contract, or if you find it was an unauthorized delivery of the contract, then I instruct you that the plaintiff would not be entitled to recover, and it would be your duty to return into court a verdict for the defendants."

From the language thus employed it will be seen that a distinction was made between the terms "execution" and "delivery," while our statute declares,

"The execution of a writing is the subscribing and delivering it, with or without affixing a seal": Section 777, L. O. L.

The execution of a document therefore necessarily includes its delivery. The instructions do not attempt to define or explain in any manner what in law constitutes the delivery of a writing, which surrender of possession has been held to mean any act, word or conduct from which may reasonably be inferred an express or implied assent on the part of one party to the document that it should irrevocably pass beyond his control, and then or subsequently to be ultimately possessed by the other party to the instrument: *Fain v. Smith,* 14 Or. 82 (12 Pac. 365, 58 Am. Rep. 281); *Shirley* v. *Burch,* 16 Or. 83 (18 Pac. 351, 8 Am. St. Rep. 273); *Allen* v. *Ayer,* 26 Or. 589 (39 Pac. 1); *Hoffmire v. Martin,* 29 Or. 240 (45 Pac. 754); *Tyler* v. *Cate,* 29 Or. 515 (45 Pac. 800); *Payne* v. *Hallgarth,* 33 Or. 430

(54 Pac. 162); *Swank* v. *Swank,* 37 Or. 439 (61 Pac. 846); *Pierson* v. *Fisher,* 48 Or. 223 (85 Pac. 621); *Burns* v. *Kennedy,* 49 Or. 588 (90 Pac. 1102); *Reeder* v. *Reeder,* 50 Or. 204 (91 Pac. 1075); *Foote* v. *Lichty,* 60 Or. 542 (120 Pac. 398); *Thrush* v. *Thrush,* 63 Or. 143 (125 Pac. 267, 126 Pac. 994).

The rule formerly obtained in Oregon that the granting or denial of a motion for a new trial was a matter resting within the discretion of the trial court, whose action upon the application would not be disturbed upon appeal, except in case of a manifest abuse of what should have been an exercise of sound judgment. Article VII, Section 3, of the organic law of this state, as amended, declares:

"In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict": Gen. Laws Or. 1911, p. 7.

Since that amendment became operative it has been held that the granting of a new trial was not a matter of discretion; that an order for the rehearing of a cause could not be sanctioned except when the court had committed some error, which if properly excepted to or seasonably called to the attention of the court and the motion denied, would have been sufficient cause for a reversal of the judgment if it had been brought up for review; and that under such circumstances the trial court upon motion or *sua sponte* possessed adequate power and was authorized within the prescribed time, to correct the error which it had committed by granting a new trial: *De Vall* v. *De Vall,* 60 Or. 493 (118 Pac. 843, 120 Pac. 13, Ann. Cas. 1914A, 409, 40 L. R. A. (N. S.) 291); *Taylor* v. *Taylor,* 61 Or.

257 (121 Pac. 431, 964) ; *Sullivan* v. *Wakefield,* 65 Or. 528 (133 Pac. 641).; *Smith & Bros. Typewriter Co.* v. *McGeorge,* 72 Or. 523 (143 Pac. 905) ; *Rudolph* v. *Portland Ry., L. & P. Co.,* 72 Or. 560 (144 Pac. 93) ; *Frederick & Nelson* v. *Bard,* 74 Or. 457 (145 Pac. 669) ; *McGinnis* v. *Studebaker Corp.,* 75 Or. 519 (146 Pac. 825, 147 Pac. 525, Ann. Cas. 1917B, 1190, L. R. A. 1916B, 868) ; *Delovage* v. *Old Oregon Creamery Co.,* 76 Or. 430 (147 Pac. 392, 149 Pac. 317) ; *Pullen* v. *Eugene,* 77 Or. 320 (146 Pac. 822, 147 Pac. 768, 1191, 151 Pac. 474) ; *Brewster* v. *Springer,* 79 Or. 88 (154 Pac. 418) ; *Wakefield* v. *Supple,* 82 Or. 595 (160 Pac. 376) ; *Speer* v. *Smith,* 83 Or. 571 (163 Pac. 979).

The rule thus established ought in our opinion to be enlarged so that, when by reason of some misapplication of the principles of law to which no exception has been taken, or in consequence of some inadvertence to which attention has not been called, if the court is satisfied that a party has not had his cause properly presented, justice which should be dispensed in all cases sanctions the setting aside of a judgment rendered upon a verdict and the granting of a new trial, when such action of the lower court does not violate Article VII, Section 3, of the Constitution of Oregon respecting the *quantum* of evidence.

In this instance, the action of the court in granting a new trial in consequence of its failure properly to instruct the jury in relation to the delivery of the alleged written contract, brings this case within the rule last announced, and this being so the orders appealed from are affirmed.        AFFIRMED.

McBRIDE, C. J., McCAMANT and BENSON, JJ., concur.